IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEATHER PURVIS,

    Plaintiff,

v.                                    Case No. 12-2364-SAC

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work; unless the claimant shows that she cannot perform her previous work, she is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden of production shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). The Commissioner meets this burden if its decision is supported by substantial evidence. *Miller*, 99 F.3d at 975.

**II. History of the case**

Plaintiff, a 33-year-old woman with a high school education, filed applications for disability insurance benefits and supplemental security income payments based primarily on bipolar disorder, depression, anxiety, and panic attacks. The administrative law judge (ALJ) found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date in 2007. At step two, the ALJ found that plaintiff has two severe impairments: generalized anxiety disorder and borderline personality disorder. At step three, the ALJ determined that those impairments do not meet or equal a listed impairment.

The ALJ then determined plaintiff's RFC, finding she could perform a full range of work at all exertional levels, limited only to following simple and low-level detailed instructions (unskilled and semi-skilled instructions) and to superficial interaction with the public. The ALJ then determined at step four that plaintiff is able to perform her past relevant work as a deposit clerk. The

ALJ also determined, in the alternative, at step five that plaintiff is able to perform other jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff is not disabled. Plaintiff contends that the ALJ failed to properly evaluate and weigh the various opinions and improperly assessed her RFC.

### III. Did the ALJ properly evaluate and weigh the opinions?

Plaintiff asserts that the ALJ erred in giving controlling weight to the opinion of a Dr. Jonas, a non-treating, non-examining medical expert. Dr. Jonas testified that the medical record supported that Plaintiff had mild impairment with activities of daily living, marked impairment in social functioning, and mild impairment in concentration, persistence, and pace (Tr. 50-51). Dr. Jonas stated that Plaintiff's marked limitation in social functioning was related to her family and treating medical sources, and "she wouldn't actually have a social impairment if we were speaking vocationally." (Tr. 56-57). He noted that she worked several jobs of increasing responsibility for over seven years until she stole from her employer, was criminally charged, and thereafter chose to constrict her functioning. Dr. Jonas also testified that there is no evidence of decompensation and Plaintiff was able to function outside a highly structured living situation (Tr. 52-53).

The ALJ's decision does not say he gave Dr. Jonas's opinion "controlling weight." Instead, it states that he gave "greater weight" to Dr. Jonas's opinion than to the other medical opinions. The ALJ also gave good

reason for the weight he assigned to Dr. Jonas's expert medical opinion, stating:

> Overall, the undersigned gives greater weight to the opinion of the medical expert as he took into consideration various inconsistencies between the treatment records and the opinion statements of treating mental health sources. The opinion of the medical expert is found to be more consistent with the evidence of record.

Tr. 17. This reason is sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the medical opinion and the reason for that weight.

"Generally, the more consistent an opinion is with the record as a whole, the more weight [the agency] will give to that opinion." 20 CFR §§ 404.1527(c)(4), 416.927(c)(4). The ALJ is not required to identify each inconsistency to which he alludes. *See Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996). The medical expert specifically noted the following inconsistencies in the record: 1) Dr. Sharma found plaintiff's degree of impairment in her activities of daily living (ADL) to be "mild," but the social worker rated it as "marked"; 2) plaintiff's having a "marked" ADL impairment is inconsistent with her taking care of herself and taking care of others' children, which plaintiff admittedly does on a regular basis; and 3) one record says plaintiff has difficulty leaving the house, but other parts of the record say she drives. (Tr. 58.) The record supports the reasons stated by the ALJ for giving Dr. Jonas's opinion greater weight that Dr. Sharma's opinion.

6

Plaintiff contends the ALJ should instead have given controlling weight to Dr. Sharma's opinion that plaintiff would have m*arked* restrictions in maintaining social functioning; *moderate* deficits of concentration, persistence, or pace; *repeated* episodes of deterioration or decompensation in work-like settings, and difficulty working at a regular job on a sustained basis. But opinions of treating physicians are not always entitled to controlling weight.

> "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188, at *2; *see also* 20 C.F.R. § 404.1527(d)(2).

*Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, he must decide "whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). Treating source medical opinions not entitled to controlling weight "are still entitled to deference" and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927. Plaintiff asserts the ALJ failed to discuss those factors, failed to specify the weight he gave to Dr. Sharma's opinion, and failed to state the reasons for any weight given. But the ALJ need not provide a provide a factor-by-factor analysis, s*ee Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and his stated reasons for giving greater

weight to Dr. Jonas's opinion necessarily serve as the reasons he gave less weight to Dr. Sharma's opinion.

Plaintiff asserts that the best medical assessments are the opinions of her "treating mental health providers," who all supported a finding of disability: Dr. Sharma (a psychiatrist plaintiff saw on four or more occasions); Ms. Patterson (a licensed clinical social worker who did not testify at the hearing); and Ms. Bollinger (plaintiff's case manager for two years). Plaintiff asserts that the ALJ should not have disregarded their opinions and should have articulated legitimate reasons for rejecting them.

Contrary to plaintiff's assertions, the ALJ did not ignore the opinions of these treating sources, but articulated specific and legitimate reasons for discounting them, stating:

> The undersigned finds the opinions of the social worker, case manager, and psychiatrist are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and the opinions are inconsistent with other substantial evidence in the record.
> An individual's [RFC] and whether an individual is "disabled" under the Act are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved to the Commissioner. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. However, the opinions have not been ignored.
> A social worker and a case manager are not "acceptable medical sources" as they are not licensed physicians or licensed psychologists… These opinions are those of "other sources,"… The opinions have been considered consistent with SSR 06-3p. Overall, the undersigned gives greater weight to the opinion of the medical expert as he took into consideration various inconsistencies between the treatment records and the opinion statements of treating mental health sources. The

> opinion of the medical expert is found to be more consistent with the evidence of record.

Tr. 17.

In finding "inconsistencies between the treatment records and the opinion statements of treating mental health sources," the ALJ discounted Dr. Sharma's opinion because it was not supported by the medical record. (Tr. 17). Dr. Sharma's own treating notes do not support the severe limitations he assigned to Plaintiff. For example, in June 2009, at plaintiff's first appointment with him, Dr. Sharma noted that plaintiff presented with symptoms of racing thoughts, anxiety, sleep problem, low energy and angry episodes. She denied any suicidal or homicidal thoughts and plans, denied auditory and visual hallucinations and reported no paranoia. He noted that Plaintiff was alert, oriented, cooperative, that she had brought two nephews to the appointment with her, and that she lived with a male roommate for 14 years with whom she had a "good relation[ship]." (Tr. 436).

At their next meeting, Plaintiff reported that her "[m]oods are OK today" and Dr. Sharma found that she was alert, oriented, and cooperative and had brought "her two kids" with her. (Tr. 439). Plaintiff reported her low energy, racing thoughts, anxiety, lack of motivation during the day time, and that she was sleeping during the day thus not sleeping well at night. *Id*. The only other treatment notes of plaintiff's appointments with Dr. Sharma are similar in reporting plaintiff to be alert, oriented, cooperative, "doing OK," her anxiety and depression "about the same," no feelings of

9

worthlessness, her thought processes "goal-directed," and her symptoms managed by medication. (Tr. 444, 450). Substantial evidence thus supports the ALJ's finding that Dr. Sharma's opinion of disability is inconsistent with his own notes.

The ALJ also discounted the medical source and other opinions because they were "inconsistent with other substantial evidence in the record." "Other substantial evidence" includes evidence that plaintiff worked regularly as a child care provider during the relevant period (Tr. 28-29, 243). *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (including claimant's daily activities as a reason for rejecting treating physician's opinion that claimant was totally disabled). That fact is inconsistent with the opinions that she was unable to work.

"Other substantial evidence" also includes plaintiff's own testimony. When asked by her own counsel to state the reasons she couldn't work full time, plaintiff replied:

> I have a hard time being around people, people I don't know. My moods fluctuate so quickly that it scares me. I get frustrated easy. I get upset easy. And I have a problem just leaving a situation if I don't like it. And that is something we are working on.

Tr. 36. This fails to constitute substantial evidence of mental disability. Plaintiff also stated that she had been babysitting for her brother since her legal problem arose and that she was afraid to find other work because she didn't trust herself and thought she might steal again. Tr. 52, citing 4F-8, Oct. 5, 06 (survey of the mental state including cognitive function). Plaintiff's

father found her a job in an insurance company but she said she did not trust herself not to steal again and preferred to return to babysitting. Tr. 51-52, citing 4F-31. These records provide substantial evidence for Dr. Jonas's conclusion, credited by the ALJ, that plaintiff's constriction in her functioning flowed from her prior crime and did not reflect a psychiatric problem *per se.* The ALJ thus properly found that the treating source opinions were inconsistent with other substantial evidence in the record, and the examples cited by the ALJ adequately explain his reasoning. *See Newbold v. Colvin*, __ F.3d __ (10th Cir. June 12, 2013).

The ALJ also found plaintiff's testimony not credible to the extent it indicated she was totally disabled from working. Plaintiff does not appear to challenge on appeal the ALJ's evaluation of her credibility.

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted). Specifically, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 16. But the ALJ did not simply recite the general factors he considered; he also stated what specific evidence he relied on in determining that the claimant's]

allegations of disability were not credible. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

First, the ALJ specifically noted that "[plaintiff's] credibility is diminished ... by her stealing, as it cuts against her ability to be honest (about her functional abilities) and brings her veracity into question." Tr. 17. The ALJ could properly consider plaintiff's theft in assessing her credibility. *Cf, Bolton v. Barnhart,* 117 Fed. Appx. 80, 85 (10th Cir. 2004) (affirming credibility assessment based partially on criminal record); Fed.R.Evid. 609 (providing that for the purpose of attacking the truthfulness of a witness, evidence of conviction of a crime shall be admitted regardless of the punishment, if the elements of the crime required proof of an act of dishonesty by the witness).

Second, the ALJ further found that plaintiff was unwilling to do what was necessary to improve her mental health condition, because she had a "tendency to unilaterally discontinue medications." Tr. 17. The record shows that in August 2008, Plaintiff stopped taking Invega and in December 2008, she reported she had not taken Abilify for a month (Tr. 383, 385). Plaintiff again stopped taking Abilify in March 2009. Tr. 397, 428, 452-53.

Additionally, the ALJ implied that the conservative nature of plaintiff's treatment diminished plaintiff's credibility. Tr. 16 ("The claimant reported a history of depression since her teenage years, but she has never been hospitalized for psychiatric problems. . . . She also noted suicidal thinking

during periods of depression as well as during intense anger. She had never been hospitalized in the past.") The ALJ also observed that for over two years after her alleged onset date of disability (April 18, 2007), plaintiff was treated only by a nurse practitioner. (Tr. 16). An ALJ can take note of the level of treatment, the "frequency of medical contacts," and the "extensiveness of the attempts .... to obtain relief" in assessing a claimant's credibility. *See Huston v, Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988); *Hackett,* 395 F.3d at 1173 (approving ALJ's reliance on fact that claimant "had responded to conservative treatment" as part of credibility evaluation); 20 C.F.R. § 404.1529(c)(3)(v) (listing "[t]reatment" as one factor that may be considered when evaluating symptoms); *id.* § 416.929(c)(3)(v) (same).

Further, the ALJ found that plaintiff's demonstrated ability after her alleged disability date to consistently care for others' children three or four days a week for up to four hours a day, and her admission that her mood was improved when she stayed busy, "belies (sic) her contention of alleged disability." Tr. 18. The nature of plaintiff's daily activities is a legitimate factor for the ALJ to consider when determining the plaintiff's testimony regarding her limitations. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). Plaintiff admitted to much more than the sporadic performance of household tasks or work, *compare Thompson, id*, and her routine daily activities are more consistent with the ALJ's conclusion of non-disability than they are with her own claims of significant mental limitations.

In sum, the court's review of the record shows substantial evidence supporting the ALJ's determinations and that the ALJ applied the correct legal standards. It is not this court's role to reweigh the evidence. *Hackett*, 395 F.3d at 1173. *See also Wall* v. Astrue, 561 F.3d 1048, 1069 (10th Cir. 2009) (where substantial evidence supports the decision, "we may not reweigh the evidence or try the issues de novo in order to advance a different view" (internal quotation marks omitted)); *Oldham,* 509 F.3d at 1257 ("We review only the *sufficiency* of the evidence, not its weight[.]").

**IV. Did the ALJ correctly determine Plaintiff's RFC?**

Plaintiff also contends that in determining plaintiff's RFC, the ALJ failed to make adequate social function limitations. Plaintiff contends that the ALJ correctly found she suffered from a severe mental impairment that resulted in a "marked limitation" in social functioning, but erred in imposing only two restrictions: performing jobs with simple, low level detailed instructions; and having only "superficial interaction with the public." Plaintiff suggests that her marked restriction in social functioning also prevents her from responding appropriately to supervisors, co-workers and usual work situations. The limitations were incorporated into the hypothetical question the ALJ asked the vocational expert (VE), allegedly rendering the VE's testimony unreliable as to plaintiff's ability to perform her past relevant work or other work.

Dr. Sharma, Dr. Jonas, and Ms. Patterson all opined that Plaintiff had marked difficulties in maintaining social functioning, and the ALJ agreed. The ALJ noted Plaintiff's testimony that she visited with family and friends but that she experienced great difficulty being around strangers and in different surroundings. She testified that she had panic attacks and left the house infrequently. (Tr. 14). However, the ALJ also noted that Dr. Jonas found, in accordance with plaintiff's admissions, that Plaintiff chose to restrict her interaction with others and her job search because of her embarrassment about her criminal activity or her fear it would recur. (Tr. 14).

Although treating sources stated their opinions that plaintiff could not work, they did not explain what functional restrictions resulted from Plaintiff's markedly impaired social functioning (Tr. 420-23, 481-83). Dr. Jonas, however, specified that Plaintiff's social limitations were related to her family and treating medical sources, and that plaintiff did not have a social impairment vocationally. (Tr. 50, 56-57, 421, 482). Nothing in the records of the treating sources supports the conclusion that plaintiff's restricted social functioning had prevented or would prevent her from responding appropriately to supervisors, co-workers and usual work situations, within the limitations given by the ALJ. The treatment notes fail to show that plaintiff was so mentally impaired as to be unable to work, and treating source opinions that plaintiff could not work are contradicted by plaintiff's

15

consistent, albeit part-time, work as a child-care provider and by the other matters of record noted above.

Additionally, substantial evidence shows that Plaintiff was not precluded from all social interaction, given her testimony that she lived with a roommate, provided day care services for two children, took the children to the park, shopped in stores with others, and socialized with her family and friends (Tr. 28-29, 35, 39-40, 42, 428, 436, 448, 457, 472).[2]

Having reviewed the record as a whole, including the medical records of these three treating sources, and having taken into account the evidence fairly detracting from its weight, the Court finds that the ALJ's decision is supported by substantial evidence. See *Oldham,* 509 F.3d at 1257–58.

**V. Was the Hypothetical Question to the VE Correct?**

In accordance with the findings above, the court rejects plaintiff's contention that the ALJ's hypothetical to the VE should have included additional limitations. The ALJ afforded the treating source opinions only diminished weight, and that determination enjoys substantial evidentiary support. The ALJ's hypothetical adequately reflected the impairments and limitations that were borne out by the evidentiary record, as is required. *Evans v.Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

---

[2] This is not a prohibited post-hoc, alternative basis for the ALJ's conclusion, but is merely additional evidence of record supporting the ALJ's stated rationale. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 19th day of June, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge